IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED NORMAN JOHNSON III,<br><br>Plaintiff,<br><br>v.<br><br>LUSK, et al.,<br><br>Defendants. | No. 2:18-CV-2984-DMC<br><br><br><br>ORDER |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is Plaintiff's first amended complaint (ECF No. 11). Plaintiff alleges Defendants violated his Eighth Amendment right against cruel and unusual punishment by creating an unsafe environment through verbal insults, threats, and breaches of procedure. Plaintiff further alleges Defendants violated his First Amendment rights by retaliating against him.

**I. SCREENING REQUIREMENT AND STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief

from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2).

The Federal Rules of Civil Procedure require complaints contain a "…short and plain statement of the claim showing that the pleader is entitled to relief." See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (quoting Fed. R. Civ. P. 8(a)(1)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal–Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and are afforded the benefit of any doubt. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572F.3d at 969.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff has named five Defendants: (1) Lusk, (2) Phelps, (3) Chatha, (4) Torres, and (5) Olmstead. Plaintiff raises five claims: (1) Plaintiff alleges Deputy Beck, tried to force him to pick up hair that belonged to another inmate and he refused. After completion of the schedule unlock, officer Beck, Gutierez, and Defendant Lusk accused him of refusing to lock down. As Lusk was exiting Plaintiff asked him to review the cameras to determine if the hair belonged to Plaintiff, Lusk replied that Plaintiff would no longer be allowed to use grooming supplies and then called Plaintiff a "fucking faggot" putting him at risk of assault by other

2

inmates; (2) Defendant Torres violated Plaintiff's right to be free from the risk of harm by unnecessarily unlocking an administrative separate inmate not involved in MIOCR; (3) Defendant Olmstead informed the other worker inmates that Plaintiff filed a grievance resulting in the other inmates threatening Plaintiff. This, Plaintiff alleges, violated his First Amendment right to file a grievance; (4) Defendant Phelps told Plaintiff he too would unlock the MIOCR group with an administrative separate inmate. Plaintiff alleges this violated his Eighth Amendment right to safety; (5) Defendant Phelps spoke with other officers regarding Plaintiff's grievances, improperly interfered with the grievance process and violating Plaintiff's First Amendment Rights; (6) Defendant Chatha wrote "Johnson ain't shit" on a small sheet of paper and placed it on a unit table

### III.  ANALYSIS

**A.     Claims 1 and 4**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

///

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

Plaintiff's first claim describes an instance of verbal harassment. Such harassment alone does not give rise to an Eighth Amendment violation and thus cannot state a claim for relief. See Keenan v. Hall, 83 F.3d 1083, 1092 (holding verbal harassment generally does not violate the Eighth Amendment). This Court does note that the alleged comment from Defendant Lusk is deeply troubling and has no place in a correctional institution.

Plaintiff's fourth claim also deals with a verbal statement that was allegedly made in an attempt to be "funny". Though Plaintiff may have felt fear after the statement was made it was a statement alone and as pleaded is insufficient to give rise to a claim of an Eighth Amendment violation. See id.

**B.** **Claim 2**

As noted above, the Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Under these principles, prison officials have a duty to take

reasonable steps to protect inmates from physical abuse.

Plaintiff's second claim is related to Defendant Torres placing MIOR group inmates, including Plaintiff, in potential contact with an administrative separate inmate. It is unclear from Plaintiff's allegations how this act presented a substantial risk to Plaintiff and there are no factual allegations that indicate Torres acted unnecessarily and wantonly for the purpose of inflicting harm. Thus, this claim fails to state a cognizable claim and cannot pass screening.

### C. Claims 3, 5, and 6

Plaintiff's third, fifth, and six claims are all labeled as violations of the First Amendment based on retaliation. In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect." Id. at n.11. By way of example, the court cited Pratt in which a retaliation claim had been decided without discussing chilling. See id. This citation is somewhat confusing in that the court in Pratt had no reason to

discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate penological interests. See Pratt, 65 F.3d at 808-09. Nonetheless, while the court has clearly stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action which is more than minimal satisfies this element. Thus, if this reading of Rhodes is correct, the chilling effect element is essentially subsumed by adverse action.

In claim three it is unclear what the adverse action is and what protected conduct triggered it. Plaintiff alleged Defendant Olmstead told the Prisoners that someone in their unit filed a complaint, causing the inmates to then utter threats to Plaintiff. Plaintiff, however does not allege Olmstead told inmates he filed the grievance, that this action was taken because Plaintiff filled a grievance, and most importantly, Plaintiff does not allege his First Amendment rights were chilled as a result of Olmstead's actions. For these reasons, Plaintiff's third claim cannot pass screening.

In claim five, it is unclear how Defendant Phelps' alleged interference with the grievance process amounts to retaliation and even more unclear what allegedly gave rise to the contended retaliation. Further, there are no facts indicating Plaintiff's First Amendment rights were chilled as a result of Phelps' conduct. For these reasons, Plaintiff's fifth claim cannot pass screening.

In claim six, Plaintiff states Defendant Chatha wrote "Johnson Ain't Shit" on a sheet of paper and left it on the unit table. It is unclear that this is retaliation, since it is unclear if Chatha knew anything about Plaintiff's grievances. Additionally, it is unlikely a hand written note of such kind could amount to adverse action. Finally, Plaintiff again does not allege any facts indicating his First Amendment rights were chilled. For these reasons, Plaintiff's sixth claim cannot pass screening.

### IV. AMENDING THE COMPLAINT

Because it is possible that some of the deficiencies identified in this order may be

cured by amending the complaint, plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because some of the defects identified in this order cannot be cured by amendment, plaintiff is not entitled to leave to amend as to such claims. Plaintiff, therefore, now has the following choices: (1) plaintiff may file an amended complaint which does not allege the claims identified herein as incurable, in which case such claims will be deemed abandoned and the court will address the remaining claims; or (2) plaintiff may file an amended complaint which continues to allege claims identified as incurable, in which case the court will issue findings and recommendations that such claims be dismissed from this action, as well as such other orders and/or findings and recommendations as may be necessary to address the remaining claims.

Finally, plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

## V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's first amended complaint (ECF No. 11) is DISMISSED with leave to amend; and

2. Plaintiff shall file a second amended complaint within 30 days of the date of service of this order.

Dated: October 2, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE